**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRY DEGROOT,** | : | **CIVIL ACTION NO. 2:07-cv-4091** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KIDSPEACE,** | : | |
| | : | |
| **Defendant** | : | **JURY TRIAL DEMANDED** |

## DEFENDANT KIDSPEACE'S PRE-TRIAL MEMORANDUM

**FLAMM, BOROFF & BACINE, PC**
Westfield Corporate Center, Suite 310
4905 West Tilghman Street
Allentown, PA 18104
(610) 336-6800

BY: _____
Sean M. Hart
Attorneys for Defendant,
KidsPeace

Dated: April 14, 2008

Pursuant to Local Rule 16.1(c) and the Court's Amended Case Management Order of March 25, 2008, Defendant KidsPeace, by and through its undersigned counsel, respectfully submits this Pre-Trial Memorandum in the above-captioned matter.

## A.   BRIEF STATEMENT OF NATURE OF ACTION AND BASIS FOR JURISDICTION.

In her Second Amended Complaint, Plaintiff Terry deGroot ("deGroot") claims that KidsPeace violated the Age Discrimination in Employment Act ("ADEA") by replacing her with a younger employee when Plaintiff failed to return to work after she had exhausted her leave under the Family and Medical Leave Act.  Plaintiff has also alleged that Defendant violated the Americans with Disabilities Act ("ADA") by failing to accommodate temporary medical restrictions that limited Plaintiff to working a forty (40) hour week during daytime hours only. In addition to alleging an action based upon an actual disability, Plaintiff has also alleged that Defendant violated the ADA under the 'perceived as' prong of the Act.  Plaintiff has also alleged that Defendant violated the Fair Labor Standard Act ("FLSA") by failing to pay overtime for time that Plaintiff failed to record on timesheets that she submitted to her supervisor for payment.

This Court has jurisdiction under 28 U.S.C. § 1331.  KidsPeace estimates that trial of this matter will require approximately 4 days.

The evidence at trial will show that under controlling legal principles, deGroot's claims are without merit.  deGroot failed to exhaust her remedies before filing suit in this matter; she is not an individual with a disability within the meaning of the ADA; KidsPeace did not perceive her as disabled; deGroot

271149 v1                                   2

cannot show that she remained qualified for her position after she refused to perform an essential function of her job; she cannot establish that anyone outside of her protected age class was treated more favorably; deGroot cannot show pretext in this case under either the ADA or ADEA; and Plaintiff cannot show that KidsPeace knew that she was performing work "off-the-clock".

## II.    BRIEF STATEMENT OF FACTS.

The specific facts of this case are outlined below.  In sum, after being informed that she would be required to work some second shifts, it is undisputed that Plaintiff walked out of KidsPeace on Friday, October 27, 2006 after removing all of her personal belongings.  On Monday, October 30, 2006, Plaintiff had an appointment with her doctor and commenced FMLA leave.  Plaintiff remained on FMLA leave until it expired in January 2007.  Plaintiff was paid her salary through December 2006 and thereafter received short term disability benefits sponsored by KidsPeace.  After her FMLA expired, Plaintiff was granted personal leave as per KidsPeace policy.  Plaintiff's personal leave was to expire on April 27, 2007, at which time she would have been terminated under KidsPeace's maximum leave policy.

On April 23, 2007, Plaintiff contacted KidsPeace and informed it of her intention to return to work.  On April 25, 2007, Plaintiff's doctor cleared her to return to work without restrictions.  Plaintiff returned to KidsPeace on April 26, 2007, and after being offered an alternative position, decided to retire.

KidsPeace approved her retirement and she has been receiving her KidsPeace retirement benefits ever since.  Plaintiff has made no attempts to find other work.

## A.     Background of KidsPeace.

The KidsPeace organization, through numerous programs and facilities, offers a wide range of services for the treatment of children in crisis, including the KidsPeace Hospital, KidsPeace National Centers, residential campuses, primary and secondary schools, diagnostic centers, outpatient clinics, therapeutic foster care outreach sites, day treatment centers, and therapeutic recreation centers. At the time that Plaintiff claims that she had been removed from her position, she was employed by KidsPeace Corporation working in the KidsPeace Hospital as Supervisor of Hospital Admissions.

## B.     Plaintiff's Employment History at KidsPeace.

Plaintiff was first employed by KidsPeace in 1990 as a Program Development Specialist.  Significantly, Plaintiff was forty-seven (47) years old at the time she was hired and already well-within the protected age class.

In 1992, Plaintiff applied for and was hired into the position of KidsPeace Hospital Administration Specialist.  Plaintiff was interviewed and recommended for the position by Richard Snyder.  Plaintiff was offered employment as a Hospital Admissions Specialist by James Miller.  In January/February of 1994, Plaintiff was promoted by Richard Snyder to the position of Supervisor of Hospital Admissions.   Plaintiff remained in this position until she failed to return to work at the expiration of her FMLA leave in January 2007 and remained an employee of KidsPeace until her retirement in April 2007.

C.    **Supervisor of Hospital Admissions.**

Plaintiff's duties as Supervisor of Hospital Admissions included: ensuring that work performed by all staff meets standards of excellence for development, accuracy, documentation, written and oral communication; role modeling adaptability and flexibility for staff in acceptance of new assignments and the integration of change; providing supervision for all 24/7 staff including the completion of annual staff evaluations, hiring and training new staff and monitoring any adjustment; and communicate with and assume all other tasks and responsibilities assigned either by the supervisor of Pennsylvania Admissions or the Director of Centralized Admissions.

D.    **Plaintiff's Non-Exempt Status and Overtime Hours.**

In February 2002, Mr. Snyder gave Plaintiff the option of being classified as exempt or non-exempt.  Although Plaintiff's job responsibilities fulfilled the requirements of at least one (1) white-collar exemption, KidsPeace recognized that Plaintiff spent a good deal of time performing "front-line" admissions work and wanted to fairly compensate her for any extra work that she was performing.

Plaintiff chose to be classified as non-exempt and this change went into effect on or about February 6, 2002, but was retroactive to January 28, 2002.

Although Plaintiff alleges that Snyder told her to submit overtime hours related only to revenue generation, Plaintiff has admitted that she submitted and was paid for overtime hours that she worked in non-revenue generating activities. Furthermore, Plaintiff has admitted that not only was she always paid for this

overtime, but also that it was never commented on by the Admissions Administration.

Mr. Snyder continued as Plaintiff's direct supervisor for another seven (7) months, until October 1, 2002. At that time, Dan Medlar became Plaintiff's direct supervisor and also assumed the responsibility of signing off on Plaintiff's time sheets. Significantly, although Plaintiff has alleged that she had informed Snyder that she had worked additional time that she had not recorded on her timesheets, Plaintiff has produced no evidence that she had ever done so between the time that she was made non-exempt (February 2002) and the time that Snyder ceased to be her direct supervisor (October 2002).

In 2003, KidsPeace provided Plaintiff with FLSA training which was conducted by Mr. David Briener. Mr. Medlar had also attended that training. Plaintiff has admitted that Mr. Medlar never directed her not to enter time on her time sheet and that he told she would be paid for all hours that she put on her timesheet. Plaintiff was also aware that she could contact payroll with any questions regarding her timesheets and that she had contacted Mr. Briener with questions regarding overtime in 2006. As a supervisor, Plaintiff also recognized the importance of employees accurately recording their time on their timesheets.

Amy Pomponio became Plaintiff's direct supervisor in June 2005. Plaintiff does not believe that she ever informed Pomponio that she was not entering all hours worked on her time sheets in 2006 and could not remember if it occurred in 2005. However, on at least one (1) occasion, Pomponio actually added overtime

hours to Plaintiff's timesheet where Plaintiff had failed to correctly calculate her hours.

### E.  Changes in KidsPeace Admissions.

At KidsPeace, both Hospital Admissions and Residential Admissions are overseen by the PA Admissions department, which is in turn overseen by Centralized Admissions.  After over a decade of service at KidsPeace, Amy Pomponio became the Manager of PA Admissions in 2006.  As Manager of PA Admissions, Ms. Pomponio was responsible for overseeing the budget of Hospital and Residential Admissions.

In 2006, KidsPeace instituted a round of budget cuts for staff salaries. This prompted Ms. Pomponio to undertake a cost analysis of the Residential and Hospital Admissions staff to see if there were any areas where costs could be reduced.  Ms. Pomponio completed her cost analysis in August 2006.  The results of the analysis showed that KidsPeace could hire full-time Hospital Admissions staff for less money than KidsPeace was currently paying in overtime wages and higher part-time hourly rates to existing Hospital Admissions staff. Additionally, throughout 2006, Plaintiff repeatedly told Ms. Pomponio that the Hospital Admissions staff was overwhelmed and needed additional help.  In August of 2006, Ms. Pomponio discussed her findings and reorganization plan with her supervisors and was authorized to begin implementing the reorganization.

F.     Plaintiff's Reaction to the Reorganization Plan.

On or about August 23, 2006, Mr. Snyder and Ms. Pomponio met with Plaintiff to make her aware of the reorganization plan.  During this meeting, Plaintiff was informed that the reorganization was in the best financial interest of KidsPeace and that she, as a Supervisor, was expected to support the plan. Plaintiff was also told that the plan would be slowly phased in over the remainder of the year, that it should not impact any of the third shift or weekend staffing, and that is was designed to address 1st and 2nd shift staffing on weekdays only. Although Mr. Snyder and Ms. Pomponio suggested that Plaintiff keep this information confidential until a detailed plan was devised to affect these proposed changes, it was left at Plaintiff's discretion as to when she would inform the staff. At this meeting, Plaintiff showed little reaction other than to express concern over the fact that the reorganization would reduce her overtime earnings and that of her existing staff.

Plaintiff was not in favor of the timing of this plan and that she informed her staff of the plan the very next day.  Shortly after this meeting, both Mr. Snyder and Ms. Pomponio began receiving emails from the Plaintiff regarding her perceived problems with hiring full time staff and also expressing her intention to assign undesirable shifts to the new, full-time hires.  Plaintiff also told several members of the staff that they were going to lose their jobs as a result of this plan.

On September 26, 2006, a meeting occurred between Richard Snyder, Amy Pomponio, Vanessa Biechy and Plaintiff.   Mr. Snyder had specifically

requested that Ms. Biechy, a member of the Human Resources staff, be present due to the amount of resistance to the reorganization plan that was being exhibited by Plaintiff.  The purpose of the meeting was to explain to Plaintiff the reasons underlying the reorganization plan for PA Admissions, how the changes were going to occur, that staff for the 2nd shift were going to be hired, and how Plaintiff could further assist in the reorganization.

During the meeting, Mr. Snyder explained to Plaintiff that because part of her job duties as Admissions Supervisor was to supervise all 24/7 staff, she may have to come in during the second shift to train new employees.  Plaintiff asked how long she would have to do this and was told that it would only be a short term situation until the new hires were trained and functional in their jobs.  Ms. Pomponio told Plaintiff that she could design her own schedule so long as Plaintiff could work some of the 2nd shifts with the new hires.

Plaintiff repeatedly said that she would not do this and specifically stated that she would not come in on any late night shifts.  Plaintiff stated that she would come in early mornings but not late at night because she went to bed early.  Ms. Pomponio told Plaintiff that this statement was not true as Ms. Pomponio had telephoned Plaintiff at the Hospital on numerous occasions when Plaintiff was at work after 9:00 p.m.  Both Mr. Snyder and Ms. Pomponio told Plaintiff that she would have to come in for some of the second shifts and Plaintiff continued to state that she would not.  As the conversation began to get heated, Ms. Biechy attempted to diffuse the situation and stated that it was not presently known how

often Plaintiff would have to come in on 2nd shift and that we would not know that until the full-time people were hired.

Two (2) days after this meeting, on September 28, 2006, Plaintiff produced a note from her doctor dated September 28, 2006, which stated that Plaintiff "was ill from 9/28/2006 to 9/28/2006". The note also stated that Plaintiff "[M]ust only work 40 hours per week-day time schedule. No work is to be taken home." The note provided no information regarding the nature of her "illness" nor did it state the anticipated duration of these restrictions nor did Plaintiff provide any such information regarding her illness to any members of the Human Resources Department or Mr. Snyder or Ms. Pomponio. In fact, Plaintiff never told any representative of KidsPeace that she was suffering from anxiety and depression.

Ms. Biechy and Ms. Pomponio next met with Plaintiff on or about Ocotber 18, 2006. This meeting lasted approximately two and one-half (2 ½) hours. This meeting was intended to be a follow-up to the September 26, 2006 meeting in which Plaintiff refused to come in on second shift to train and supervise the new, full-time hires. During this meeting, Ms. Pomponio attempted to explain the importance of Plaintiff's presence to train and supervise the new hires until they understood their job functions. Ms. Pomponio also reminded Plaintiff of problems she had in the past with other employees that Plaintiff had left unsupervised on the 2nd shift. Plaintiff was again told that she needed to provide training and supervision to all shifts and that she may have to come in on second shift to provide training to the new full time staff members after they are hired.

10

Plaintiff was repeatedly asked if she would come in on the 2nd shift but she would not provide a direct answer.  While Plaintiff did not flatly refuse to come in as she had during the September 26, 2006, meeting, she stated that she was not able not come in because of her medical condition.  Plaintiff also repeatedly stated that she would not talk about her medical condition with Biechy or Pomponio despite the fact that neither Biechy nor Pomponio asked her about her medical condition.  Ms. Biechy advised Plaintiff to contact the employee health nurse to provide better clarification of her condition/restrictions.  However, Plaintiff would not give the employee health nurse permission to speak with Dr. Rush-Spinosa and required that all communications with her doctor had to be in writing.

According to the medical records from Dr. Rush-Spinosa, Plaintiff had an appointment with Dr. Rush-Spinosa on October 19, 2006, the very next day. Significantly, the notes from Plaintiff's physical examination during this office visit indicate that she showed "no unusual anxiety or evidence of depression," nor was she taking any medication for anxiety and/or depression at the time of this office visit.

On October 20, 2006, a meeting was held with Plaintiff, Ms. Pomponio, Ms. Biechy and the hospital admissions staff to explain the reorganization plan to the staff.  During the meeting, Plaintiff did not express any support for the reorganization plan and did not actively participate in the meeting at all. According to Ms. Biechy, Plaintiff actually left the meeting at least six (6) times to attend to other business.  Plaintiff admitted that she left the meeting at least three

(3) times, but claims that her multiple departures from the meeting were due to the admission of a child that she chose to process.

On that same date, KidsPeace's employee health nurse contacted Plaintiff and left a voice-message asking Plaintiff for consent to call Plaintiff's doctor for clarification on the September 28, 2006 note from Dr. Rush-Spinosa. Plaintiff responded via email stating that she would only permit contact with her physician via written questions that Plaintiff would take with her on her next visit scheduled for October 26, 2006. Inman responded that the September 28th note did not contain any duration of restriction and did not state what Plaintiff can and can't do in relation to her job responsibilities of providing 24/7 supervision and coverage in her department. Plaintiff provided a largely non-responsive reply and failed to provide Inman with any of the substantive information requested. On or about October 23, 2006, Inman provided Plaintiff with a written letter requesting information from Dr. Rush-Spinosa regarding the duration of Plaintiff's restrictions.

Three days later, on October 26, 2006, Dr. Rush-Spinosa wrote a response to Ms. Inman's request indicating that Plaintiff was to work only 40 hours per week (leaving work by 5-6 p.m.) and that the restriction was temporary - to last only until January 2007. Coincidental or not, these restrictions would prevent Plaintiff from training and supervising any new, full-time hires on second shift for the remainder of 2006 and until after the reorganization had been completed in January 2007. Furthermore, at no time did Plaintiff or her doctor ever state that she was disabled or provide any information to the Human

Resources Department regarding her alleged disability.   This note did not contain any information regarding Plaintiff's medical condition.   Significantly, Plaintiff was never told by any of her health care providers that she had been diagnosed with her later claimed disability of anxiety and/or depression.

### G.     Plaintiff's Departure from KidsPeace.

On Friday, October 27, 2006, Mr. Snyder, Ms. Pomponio and Ms. Biechy again met with Plaintiff.  At this meeting, Mr. Snyder informed Plaintiff that if she refused to supervise all shifts as required by her current position, she could have the option to move to other positions in the Admissions Department that did not require her to be available for all shifts.  At the conclusion of the meeting, Mr. Snyder told Plaintiff to take the weekend to think about what she would like to do. Plaintiff immediately asked if this meant that she was being terminated. Mr. Snyder told her that the request did not mean that she was fired.  In addition, Snyder informed Plaintiff that KidsPeace had a vacant position for her if she did not want to continue in her role as Hospital Admissions Supervisor.

After the meeting, Plaintiff proceeded to her workstation.  Shortly thereafter Mr. Snyder went to Plaintiff's work area.  When he arrived he saw Plaintiff hugging several members of her staff and then observed her begin to clean her belongings from her desk and her workstation.  Plaintiff then made several trips to her car until all of her belongings had been removed from the premises.  After she was through, Plaintiff had another employee approach Mr. Snyder and tell him "Terry told me to tell you that she's gone."  Plaintiff has not

returned to her job at KidsPeace since and never informed Mr. Snyder if she wished either to continue in her job as supervisor or to take an alternate position.

Significantly, at the time Plaintiff filed her charge of discrimination with the EEOC, neither Mr. Snyder nor Ms. Pomponio had any idea that Plaintiff suffered from any disability.

## H.    Plaintiff's Leave of Absence.

Plaintiff did not show up for work on Monday October 30, 2006.  On or about October 30, 2006, KidsPeace Human Resources received a note from Doctor Rush-Spinosa stating only that Plaintiff was "ill" and would be out of work from October 30, 2006 through November 13, 2006.

On or about November 1, 2006 Plaintiff completed and executed a Request for Family and Medical Leave form.  Plaintiff stated on the form that her return to work was "unknown" and certified that the need was necessary for a serious health condition that rendered her unable to perform the essential functions of her job.  It is significant to note, however, that nothing submitted by the Plaintiff specifically identified the "serious health condition" for which the Plaintiff was seeking the FMLA leave.

Curiously, Plaintiff refused to sign the KidsPeace form for release of medical information.  Rather, Plaintiff drafted her own release form which: 1) required that any correspondence to her doctor be in writing; 2) limited the persons to whom the information could be released; 3) limited the time frame from which any medical information could be provided to the period between

October 30 and December 1, 2006; and 4) allowed only one (1) written contact to Dr. Rush-Spinosa.

Despite Plaintiff's lack of cooperation, her FMLA leave was approved. Plaintiff stayed out on FMLA leave until it was exhausted on January 21, 2007. Contrary to the allegations in Plaintiff's Second Amended Complaint that "her position was posted within two weeks of her removal", Plaintiff's position was held open for her until the exhaustion of her FMLA leave. After her FLMA leave was exhausted, Plaintiff was approved for continuing personal leave as per KidsPeace policy. This leave would expire on or about April 27, 2007.

On or about December 28, 2006, Plaintiff completed an Application for Short Term Disability Benefits. This document was the first notice that KidsPeace ever received directly from Plaintiff regarding the nature of her medical condition. Specifically, Plaintiff stated that her job-related stress was causing a myriad of problems but paradoxically states that her condition was not related to her occupation. Plaintiff stated that the onset of her medical condition occurred on the exact same day that she was told that she would have to temporarily work some second shifts to help train the new, full-time hires in Hospital Admissions despite the fact that her October 19, 2006 examination by Dr. Rush-Spinosa revealed no anxiety or depression.

## I.    Plaintiff's EEOC Charge.

On or about March 19, 2007,Plaintiff filed her charge of discrimination with the EEOC. On that same date, she also completed various EEOC Questionnaires. In her responses to these questionnaires, which were sworn to

by Plaintiff and prepared with the assistance of counsel, Plaintiff stated: (1) she believes that she was removed from her position because her supervisors viewed her as being insubordinate; (2) she believes that her age, salary, and request for an accommodation were the reasons she was removed from her position and KidsPeace had a "continuous emphasis on budget cutting"; and (3) she stated that her disability was temporary and that any 'perceived as' disabled claim was not applicable to her charge of discrimination.

### J.   DOL Complaint.

On or about February 6, 2007, Plaintiff filed a Wage and Hour Complaint with the Department of Labor ("DOL"). In that Complaint, Plaintiff states that she did enter overtime hours for non-supervisory functions on her timesheets and that "all such hours were always paid and never commented on by Admissions administration."

As part of the DOL investigation, Plaintiff submitted to DOL documentation of the overtime that she alleged she was due. Based upon the documents that Plaintiff submitted, the DOL concluded that if a violation had occurred in this case, Plaintiff would have been owed a total of $3,574.38. Plaintiff testified that she assumes this is a valid calculation of the total amount that she claims she is owed for unpaid overtime wages. Ultimately, DOL could not find that there was conclusive evidence of a violation and issued Plaintiff a letter advising her that although DOL did not find the case suitable for litigation, she had the right to bring her own suit for back wages.

### K.     Plaintiff's Retirement from KidsPeace.

While still out of work on personal leave, Plaintiff decided to come back to work at KidsPeace around the end of March or the beginning of April 2007.   On or about April 23, 2007, Plaintiff sent an email to KidsPeace indicating the she planned to return to work on April 26, 2007, the day before she would have been terminated under KidsPeace's maximum leave policy.  On or about April 25, 2007, Plaintiff's psychiatrist, Dr. David W. Daley, cleared her to return to work without reasonable accommodations.  Plaintiff has not treated with Dr. Daley since he cleared her to return to work on April 25, 2007.  On or about April 26, 2007, Plaintiff returned to work long enough to fill out her retirement application and then left.  On or about April 30, 2007, Plaintiff's Retirement Application was approved.  Plaintiff has taken no steps to find any other employment since she left KidsPeace.  Plaintiff had previously stated in a letter to KidsPeace dated January 9, 2007, that she planned to retire at the end of 2007.

## II.     STATEMENT OF SIGNIFICANT/UNIQUE LEGAL OR PROCEDURAL ISSES ON WHICH THE COURT WILL BE REQUIRED TO RULE.

The Court will have to determine if Plaintiff waived her attorney/client privilege by sending a courtesy copy of a letter that she wrote to her attorney, Donald P. Russo, Esquire to KidsPeace's CEO, Lorrie Henderson in which Plaintiff discusses most, if not all, of the key issues in this case.  See Defendant's Trial Exhibits at Exhibit "41".  Defendant has fully briefed this issue in a Motion in Limine that has been filed with the Court.

As a threshold procedural issue, Plaintiff failed to exhaust her administrative remedies for her ADA claim because she filed suit in the Court of

Common Pleas of Lehigh County before receiving her right-to-sue letter from the EEOC and discovery has produced no evidence that would permit the Court to apply the doctrine of equitable tolling. As a threshold substantive issue, deGroot is not an individual with a disability within the meaning of the ADA and KidsPeace did not regard her as disabled. These issues are fully briefed in KidsPeace's Motion to Dismiss the Second Amended Complaint and Motion for Summary Judgment which are currently pending before the Court.

Additionally, KidsPeace has made an offer of judgment pursuant to Fed. R. Civ. P. 68 in excess of what Plaintiff could hope to recover under her FLSA claim. Also, Plaintiff has failed to mitigate her damages by effectively removing herself from the job market. Therefore, Plaintiff should be precluded from seeking an award of back pay or front pay. To the extent that deGroot seeks to proffer evidence of these damages, it should be excluded. This issue is also fully briefed in KidsPeace's Motion for Summary Judgment and Motion in Limine.

## IV.    WITNESSES

Defendant anticipates calling the following liability witnesses on its case in chief:

> Plaintiff, Terry deGroot
> 5998 Krause Road
> Schnecksville, PA 18078
>
> Amy Pomponio
> 5300 KidsPeace Drive
> Orefield, PA 18069
>
> Richard Snyder
> 5300 KidsPeace Drive
> Orefield, PA 18069

Vanessa Beichy
5300 KidsPeace Drive
Orefield, PA 18069

Liz Inman
5300 KidsPeace Drive
Orefield, PA 18069

Dan Medlar
5300 KidsPeace Drive
Orefield, PA 18069

David Briener
5300 KidsPeace Drive
Orefield, PA 18069

James Miller
5300 KidsPeace Drive
Orefield, PA 18069

Johanna Ulicny
5300 KidsPeace Drive
Orefield, PA 18069

Lisa Garbacik
5300 KidsPeace Drive
Orefield, PA 18069

Colleen Rieger
5300 KidsPeace Drive
Orefield, PA 18069

Dr. Wendy Rush-Spinosa
2901 Hamilton Blvd.
Suite 100
Allentown, PA 18104

Custodian of Records
Heritage Family Medical
2901 Hamilton Blvd.
Suite 100
Allentown, PA 18104

Alfonso J Gristina
Alan Davis
U.S. Department of Labor

271149 v1

19

201 Penn Street, Box 17
Reading, PA 19601

David W. Daley, D.O.
7729 Main Street
Fogelsville, PA 18051

Custodian of Records
Office David, W. Daley, D.O.
7729 Main Street
Fogelsville, PA 18051

Custodian of Records
St. Luke's Hospital, Allentown Campus
1837 Linden Street
Allentown, PA 18104

Joseph M. Hardiman, III
Area Director
Equal Employment Opportunity Commission
Liberty Center Suite 300
1001 Liberty Avenue
Pittsburgh, PA 15222

Donald P. Russo, Esquire
117 East Broad Street
P.O. Box 1890
Bethlehem, PA 18016-1890
(Mr. Russo may only be called if the Court rules that Plaintiff waived
her attorney/client privilege in this case)

Defendant reserves the right to call any additional or other witnesses,

including those identified by Plaintiff in her Pre-Trial Memorandum, based on

Plaintiff's presentation of her case.   Defendant reserves the right to update this

list up until and during the time of trial.

## V.    PARTIES' NAMES AND ADDRESSES

To the best of KidsPeace's knowledge, deGroot resides at 5998 Krause

Road, Schnecksville, PA 18078 and resided there at the time this cause of action

arose.  KidsPeace's address at present, and at the time the cause of action

arose, is 5300 KidsPeace Drive, Orefield, PA 18069.

## VI.    TRIAL COUNSEL'S CONTACT INFORMATION

Sean M. Hart is lead trial counsel for KidsPeace and Walter H. Flamm, Jr.

is assistant trial counsel.  Their contact information is as follows:  Flamm, Boroff

& Bacine, P.C., Westfield Corporate Center, Suite 310, 4905 W. Tilghman Street,

Allentown, PA 18104, (610) 366-6903 (Mr. Hart); (267) 419-1501 (Mr. Flamm).

Respectfully Submitted,

**Flamm, Boroff & Bacine, P.C.**

By: _____
   Sean M. Hart
   I.D. No. 82084
   Westfield Corporate Center
   Suite 310
   4905 Tilghman Street
   Allentown, PA 18104
   (610) 821-7000

Attorneys for Defendant,
KidsPeace

Date:  April 14, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERRY DEGROOT,          :

                             :

                             :     **CIVIL ACTION NO. 2:07-cv- 4091**

            **Plaintiff**   :

                             :

  **v.**                        :

                             :

**KIDSPEACE,**             :     **JURY TRIAL DEMANDED**

                             :

          **Defendant**  :

## CERTIFICATE OF SERVICE

     I, Sean M. Hart, Esquire, attorney for Defendant, KidsPeace, certify that on this 14th day of April, 2008, service of a true and complete copy of the above and foregoing Defendant's Pre-Trial Memorandum was served upon each party or attorney of record herein via electronic filing (and is available for viewing and downloading from the ECF system) and U.S. first class mail upon the individual set forth below:

          Donald P. Russo, Esquire
          117 East Broad Street
          P.O. Box 1890
          Bethlehem, PA 18016-1890

          FLAMM, BOROFF & BACINE, P.C.

          By: _____
              /Sean M. Hart